IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| NSAC, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. _____ |
| BEN-BOLT PALITO BLANCO C.I.S.D., | § § § | |
| *Defendant*. | § § | |

## COMPLAINT

Plaintiff NSAC, LLC ("NSAC") files this Complaint against Defendant Ben-Bolt Palito Blanco C.I.S.D. ("Ben-Bolt"), and in support alleges as follows:

### I.   INTRODUCTION

1. NSAC brings this action to recover damages for Ben-Bolt's breach of the parties' ITFS Airtime Use and Royalty Agreement (the "Spectrum Lease").

2. The Spectrum Lease provides NSAC with a right of first refusal for any excess spectrum capacity that Ben-Bolt wishes to lease.

3. Ben-Bolt violated its obligations and NSAC's right of first refusal by leasing excess spectrum capacity to Gtek Computers, LLC ("Gtek") without first offering it to NSAC under the terms set forth in the Spectrum Lease.

4. Thus, NSAC is entitled to the profits it would have received from the excess spectrum capacity if Ben-Bolt had leased it to NSAC in accordance with NSAC's bargained-for rights.

122968724_2

## II.     PARTIES

5. NSAC is a Delaware limited liability company, whose sole member is Clearwire XOHM LLC. The sole member of Clearwire XOHM LLC is Clearwire Communications LLC. The sole member of Clearwire Communications LLC is Clearwire Corporation, which is a Delaware corporation with its principal place of business in Kansas. Therefore, NSAC is a citizen of Kansas and Delaware.

6. Ben-Bolt is a Texas independent school district and corporate body with its principal place of business in Jim Wells County, Texas. It has the statutory capacity to be sued and has contractually waived all immunity. Ben-Bolt is a Texas citizen.

## III.    JURISDICTION AND VENUE

7. The Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332. NSAC is a citizen of Delaware and Kansas, and Ben-Bolt is a citizen of Texas. The amount in controversy exceeds $75,000.

8. The Court has personal jurisdiction over Ben-Bolt because it is headquartered in this district.

9. Venue in this district is proper because Ben-Bolt resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.    FACTUAL BACKGROUND

10. The Federal Communications Commission ("FCC") licensed certain spectrum capacity to Ben-Bolt sometime before November 2004.

11. On November 1, 2004, Ben-Bolt and Nextel Spectrum Acquisition Corporation ("Nextel") entered into the Spectrum Lease.

12. Nextel subsequently converted to NSAC, which is the entity that currently holds all rights under the Spectrum Lease.

13. Under the Spectrum Lease, Ben-Bolt leased a portion of its spectrum capacity to NSAC and agreed to provide NSAC with a right of first refusal for any additional capacity that Ben-Bolt wished to lease.

14. In exchange for these rights, among others, NSAC agreed to pay Ben-Bolt a monthly royalty fee and provided other consideration.

15. The right of first refusal clause of the Spectrum Lease provides, in relevant part, as follows:

> (a) **Grant and Exercise**. Licensee shall not lease or otherwise provide any of the capacity of the ITFS Channels to a third party, assign or transfer any direct or indirect interest in any License or agree to such, lease, provision, assignment or transfer, until Licensee has complied with the terms of this Section II (the "Right of First Refusal"). Before agreeing to any such transaction, Licensee shall: (A) obtain a bona fide, unconditional and continuing written offer including the material terms for such lease, provision, assignment or transfer from the third party; and (B) deliver such written offer to Operator along with Licensee's written and signed statement (such offer and statements referred to as the "ROFR Notice"): (i) that Licensee has disclosed the terms of the Right of First Refusal (but no other part of this Agreement) in writing to the third party; (ii) that Licensee intends to accept the third party offer, if Operator or its designee intends to exercise its Right of First Refusal; (iii) that Licensee offers to enter into an agreement with Operator or its designee on the same material terms and conditions of the offer and otherwise reasonably acceptable to Operator in form and substance if Operator or its designee gives Licensee a notice of acceptance (an "Acceptance Notice") within that period; and (iv) describing all elements of the offer to the extent necessary for such elements to be readily understood, including a description of any non-cash consideration sufficient for Operator to place an accurate value on such consideration. Licensee shall not entertain any offer that includes more than the capacity of the ITFS Channels, any terms or conditions that are unusual for agreements to use ITFS channel capacity or assign ITFS authorizations, or any form of consideration that cannot be readily obtained in the market by Operator and provided to Licensee by Operator at a cost to Operator as favorable as the best cost any third party would have to incur to procure the consideration. If any such consideration appears in an offer in a ROFR Notice, Operator may respond to the ROFR Notice, and accept the offer, as though such consideration were not a part of the offer contained in the ROFR Notice.

. . .

> (d) **Duration**. The Right of First Refusal shall terminate five (5) years after the end of this Agreement. While this Agreement is in effect, Licensee shall not negotiate or contract with any third party to sell, assign, transfer or use, or to limit the sale, assignment, transfer or use, of the whole or any part of the ITFS Channels or Licenses involving any period during or after the time this Agreement is in effect.

Spectrum Lease § II.

16.     In the above-quoted provision, "Licensee" refers to Ben-Bolt, "Operator" refers to NSAC, and the "ITFS Channels" refers to Ben-Bolt's spectrum capacity as licensed to it by the FCC.

17.     Pursuant to 47 C.F.R. § 27.1214(e), the Spectrum Lease terminates as of November 1, 2019. However, the rights and obligations of the parties, as set forth in Section II of the Spectrum Lease, continue to remain in full force and effect through October 31, 2024.

18.     In March 2016, Ben-Bolt leased a portion of its spectrum capacity to Gtek. *See* https://wireless2.fcc.gov/UlsApp/UlsSearch/leasesList.jsp?leasetype=null&licKey=2588468.

19.     Ben-Bolt failed to satisfy any of its obligations under Section II of the Spectrum Lease before entering into the lease with Gtek.

20.     Additionally, the term of the Gtek lease, which began in March 2016 and expires in August 2024, overlaps with the term of the Spectrum Lease by more than three-and-a-half years.

21.     Because Ben-Bolt failed to satisfy its obligations, NSAC was denied its valuable and bargained-for right to lease and profit from the spectrum capacity that is the subject of the Gtek lease.

22.     NSAC first discovered the Gtek lease in June 2019. NSAC immediately sent written notice of the breach to Ben-Bolt, and it provided Ben-Bolt with an opportunity to cure through termination of the Gtek lease.

23. After receiving NSAC's notice, Ben-Bolt requested an extension of the cure period from July 16, 2019 to September 16, 2019. NSAC agreed to the extension.

24. As of the date of this filing, Ben-Bolt has taken no steps to cure its breach of the Spectrum Lease. In fact, Ben-Bolt and its representatives have stopped communicating altogether with NSAC, notwithstanding multiple attempts by NSAC to discuss this matter.

25. NSAC has satisfied all of its obligations under the Spectrum Lease, including any conditions precedent to filing suit.

### V.   COUNT I: BREACH OF CONTRACT

26. NSAC fully incorporates all preceding allegations as if fully set forth in this count.

27. Nextel n/k/a NSAC and Ben-Bolt entered into the Spectrum Lease, which is a valid and enforceable contract.

28. The Spectrum Lease includes legally enforceable obligations on the part of Ben-Bolt (i) to comply with all the requirements of Section II(a) before leasing any spectrum capacity to a third party, and (ii) to refrain from leasing any spectrum capacity to a third party for a term that begins before November 1, 2019.

29. By leasing spectrum capacity to Gtek for a term that began in March 2016, and by doing so without undertaking any of the requirements set forth in Section II(a) of the Spectrum Lease, Ben-Bolt violated its contractual obligations.

30. NSAC, on the other hand, has performed and satisfied all of its obligations under the Spectrum Lease.

31. As a direct and proximate result of Ben-Bolt's contractual violations, NSAC suffered damages in the form of profits it would have earned had it leased the spectrum capacity that is the subject of the Gtek lease. These lost profits exceed $75,000.

## VI.     ATTORNEYS' FEES AND COSTS

32.     Pursuant to § 38.001 of the Texas Civil Practice and Remedies Code, NSAC seeks its reasonable and necessary attorneys' fees and costs incurred to prosecute this lawsuit, and, if necessary, on appeal.

## VII.    PRAYER FOR RELIEF AND JURY DEMAND

Wherefore, NSAC requests that judgment be entered in its favor and against Ben-Bolt, and that such judgment award NSAC: (i) actual damages; (ii) reasonable attorneys' fees and costs as permitted by law; (iii) pre-judgment and post-judgment interest; and (iv) all other relief—in law or in equity—to which NSAC is entitled.

NSAC demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Yasser A. Madriz*
Yasser A. Madriz
*Attorney-in-Charge*
Texas Bar No. 24037015
Southern District No. 39080
ymadriz@mcguirewoods.com
MCGUIREWOODS, LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
832-255-6361 (Telephone)
832-214-9931 (Fax)

OF COUNSEL:
Miles O. Indest
Texas Bar No. 24101952
Southern District No.  3070349
mindest@mcguirewoods.com
MCGUIREWOODS, LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
713-571-9191 (Telephone)
713-571-9652 (Fax)

**ATTORNEYS FOR PLAINTIFF NSAC, LLC**

122968724_2